# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

Linda A. Nash

Plaintiff

v.

**Case No. 1:23-cv-3134 CJN**

UNITED STATES OF AMERICA CORPORATION
STATE OF FLORIDA CORPORATION
SEMINOLE COUNTY FLORIDA CORPORATION
BANK OF AMERICA INC.
JANE AND JOHN DOES

Defendants

RECEIVED
Mail Room
DEC 26 2023
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## PLAINTIFF'S MEMORANDUM POINTS OF LAW AND RESPONSE TO MULTIPLE DEFENDANTS' MOTIONS TO DISMISS

**COMES NOW,** Plaintiff Linda Nash to respond to, object to multiple Defendants' Motions to Dismiss and to submit her Memorandum Points of Law to this Court. Among this Plaintiff's claims submitted to this court in this matter include but are not limited to some of the very same violations of State Laws, Federal Laws, and Acts passed by the United States Congress that were included in this Court's National Consent Judgment Ruling on April 4, 2012. The laws, Acts of Congress, and Civil rights violated and stipulated in that National Consent Judgment, are not only prevalent in this case but have been proven to a level of Clear and Convincing by evidence submitted in the State case These charges were and still are both undenied and not disputed by Bank of America (hereafter BOA) in the Florida State Case. The Seminole County Corporate Court had ruled that it has lost jurisdiction of the case and the State of Florida Corporation Appellate Court ruled to excuse BOA for their numerous violations and criminal acts. Consequently the Seminole County Corporation reported to hold a bogus Public Sale where the property was eventually gifted and Titled in the name of the United State Corporation sub-agent, The Federal National Mortgage Association (hereafter referred to as FNMA).

BOA file their original complaint against This Plaintiff and her Co-owner on November 7, 2011, in the Seminole County Court 6 months before the National Consent Judgment of April 4, 2012 was signed. The United States Department of Justice and 49 State Attorneys General brought that case against BOA and four other Financial Institutions for violations of several Federal laws, State Laws and Acts of the United Congress. It is those violations that are at the heart of this case and this Plaintiff and her co-owner were two of the millions of Florida Homeowner "victims" that were facing unlawful Foreclosure the Florida Attorney General reported to this court it was representing in that Consent Judgment. **Exhibit E-1. The National Consent Judgment.**

## CLAIM AND MEMORANDUM OF POINTS OF LAW

1. The Honorable Judge Rosemary Collyer declared this court to be an Article III Constitution Court of Law when this court presided over the National Consent Judgment. **All** above defendants, except the Seminole County Florida Corporation, participate in, were signatories to, and subject to complying with the ruling of this court in that Judgment. It was the criminal and civil violations of Federal and State Constitutional Law committed by the above Defendant, BOA, along with its predecessors and successors, that were the subjected to this Court's order. It was the 49 State Attorneys General, that won that Judgment on behalf of the homeowner victims and citizens of their states, aqs a means of protecting them from future harm for the crimes that BOA perpetrated on the citizens of their states. Judge Collyer stated:

**"BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Mortgage Ventures, LLC, and Countrywide Bank, FSB (collectively for the sake of convenience only "Defendant") violated among other laws, the Unfair and Deceptive Act and Practices Laws of the Plaintiff States, the False Claim Act, the Financial Institution Reform Recovery and Enforcement Act of 1989, the Servicemembers Civil Relief Act, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.**

All litigants in all cases place themselves subject to the court's orders, including the winning partties. The instruction of Judge Collyer applied to the Plaintiffs in that National ruling as well as the Defendants, as an Article III Court.

2. Further BOA was ordered to pay the 49 states, including the State of Florida, directly $2,382,415,075.00 (Florida's portion was approximately $335 million) stated in Exhibit B paragraph 1(b)(i)) of the Consent Judgment. In addition, BOA was required to pay State Litigants $1,489.813.925.00 as payment to foreclosed Borrowers, $7,626, 200,000.00 in Consumer Relief, and $948,000,000.00 for refinancing relief. BOA's total for its part of wrongdoing and violations of laws was over $12.6 Billion. It was the State of Florida Corporation's failure to comply with this Court's order, along with BOA's failure to comply with numerous section of Exhibits A, C, D, E and F of that Consent Judgment that is the underlying cause for the claim in this case.

3. The State of Florida Attorney General was a Plaintiff's in the Consent Judgment as the highest authorized Law Enforcement Officer under the Governor in the Executive Branch of state government. It is the duty of the Governor and Executive Branch of State Government to protect and safeguarding of the land record. In accordance with law the it is the responsibility of that branch of government to stay aware of how the rightful owners of real property are and to collect real property tax. The Northwest Ordinance of 1787, which sets the minimum requirements for the establishment of state government, grants that authority exclusively to the Governor of each state. This document has stood as the basic requirements for statehood for 235 years, with only having one revision, which was the Emancipation Proclamation of 1863. See Attached **E-2 The Northwest Ordinance of 1787**

4. The National Consent Judgment of April 4, 2012, recognized and acknowledged that each homeowner victim had a right seek their own remedy and that the State reserved its right to criminally

prosecute financial institutions for wrongdoing. None of which happened in this case. The Trial in the Seminole County Court was held on September 15, 2014, the trial judge stopped the trial immediately after BOA had rested their side of the issues and before the homeowners had an opportunity to present their side of the case. The Trial Judge dismissed the foreclosure, based on BOA's non-compliance with State and Federal Laws, non-compliance of a condition precedence **(15 USC 1692g)** and inconsistency with it's original complaint. See **E-3 Trial Court Ruling**

5. Irrespective of BOA's commitments promised to this court in the Consent Judgment they appealed the Seminole County Trial Court ruling. The State of Florida's Corporate Appellate Court opinion, under the color of law, on May 6, 2016, submitted with this Plaintiff original Petition that culminated into this Plaintiff's current Complaint for Deprivation of Civil Rights, and Demand for Jury Trial based on Breach of Contract, Breach of Specific Performance, and Breach Oath of Office, which has brought this Plaintiff to this Article III Court.

6. Florida is a "Lien Theory State". Whereas the mortgage is recognized as a financial lien on the property and NOT an interest in any rights of ownership. The alleged lender is required to prove they have complied with all elements of legally binding contract in order to obtain a right to enforce by a Court of Law/Equity and not a corporation administrative court where all Homeowners' Civil rights can be protected.

**Fla. SS. 702.01 Equity. —All mortgages shall be foreclosed in equity. In a mortgage foreclosure action, the court shall sever for separate trial all counterclaims against the foreclosing mortgagee. The foreclosure claim shall, if tried, be tried to the court without a jury.**

It is based on the above Fla. Statute that all Florida Corporation Affiliated Bar Card Holds, known as Foreclosure Defense Attorneys, refuse this Plaintiff's request to counter-sue and her request for a Jury Trial. All controlling documents, the 2005 Quitclaim Deed, the Mortgage, and the

Promissory Note filed with the court and in the land records were proven by this Plaintiff, once she became a Pro Se Litigant, to have been altered after the alleged signing. Thereby, by definition, all were forgeries. As well, both a fraudulent, manufactured assignment of Mortgage filed in the land records and a letter from BOA to this Plaintiff dated November 5, 2010, BOA claimed they purchased this mortgage from the originator America's Wholesale Lender (hereafter AWL). This would indicate that this debt had been satisfied and the Note released under paragraph #23 of the mortgage contract. Thereby making AWL the only obligator to the Note under #8 of the Note.

7. Through a series of pleadings and hearings held in the Seminole County Corporate court this Plaintiff managed to get these issues, along with others, before the Seminole County Judge Susan Stacy. However, Judge Stacy determined she had lost jurisdiction to rule in favor of the Homeowners in this case, based on the state's higher court having mandated a foreclosure and also having already waived any right this Plaintiff had to present a defense. On May 11, 2021 Judge Stacy ordered the case closed, this Plaintiff's Motion for an Evidentiary hearing denied, all open motions had been denied and any addition relief for litigants must be in a New Petition to the court. BOA's open Motion for a sale date had been denied and this property remained Titled to homeowners. BOA did not appeal that ruling.

8. On February 9, 2022, BOA motioned the Seminole County Court to reopen the case for the specific and sole purpose of setting a foreclosure sale date for the property. That motion was granted over the objection of this Plaintiff the fact that there were serious unresolved First Impression issues in this case as well as the court's determination it had lost jurisdiction.

9. The State of Florida and Seminole County officers and employees are required to follow Florida law when conducting a foreclosure sale. This would include, but not limited them to **Fla SS 45.031 (3), (4),(5) and (7)– (Judicial Sale Procedures)** and **Fla SS 468.388 (1)(b),(7),(8) and (11)- (Conduct of**

**a Public Auction)** which were not followed in this alleged court conduct sale of the subject property. These laws required a CASH-ONLY sale of the property to the public. This property was not sold for Cash and not sold to the public. All documents generated signed and seal by the Clerks office state complete untruths. The Certificate of sale reports the property was sold for Cash to an unidentified "Plaintiff" for cash and the Title Certificate reported that the United States of America Corporation sub-agent The Federal National Mortgage Association (hereafter referred to as FNMA) was the purchaser of the property, who was never a Plaintiff. As well the Clerks Office also reported that that no funds were collected, no cash was paid, no stamp tax was paid, no disbursement of funds was made, and no financial money judgment was satisfied.

10. In effect, no sale had occurred. FNMA, as a government-created and sponsored entity was never granted any power to title itself on mortgages or be granted title and ownership rights to privately owned parcels of American Soil by congress. The clerk of the Seminole County Court was ordered to conduct a public auction, not gift a foreign corporate sub-agent this parcel of privately owned land. However, in response to this Plaintiff's written open records request for documentation under the Freedom of Information Act of the United States Congress, the general county for Seminole County advised there were no documents to support that a Public Auction had ever taken place. All documents to support the above statements were filed and part of the State case, to date they remain undenied and undisputed.

11. Among the unresolved issues involved in this case was a fraudulent, forged, 2005 Quitclaim deed filed in the land records reporting to have removed Mr. Richard Annette from Title. Mr. Richard Annette has been a titled owner if the property since 2001. BOA attached their alleged mortgage to this forged 2005 deed when they originally filed it in the local land records. Not only had both the State Corporate Appellate Court and the Seminole County Corporate Court known that deed to be fraudulent,

forged, without validity and without Mr. Annette's knowledge and consent. BOA has never stated a claim or cause of action against Mr. Annette that would grant any court subject matter or personal jurisdiction to order the sale and/or conveyance of his property or property rights to anyone, as Mr. Annette was not a party to this alleged mortgage contract or Promissory Note. This issue has been acknowledged by the Seminole County Judge Susan Stacy as a First Impression unresolved issue in the State's case.

Letters between this Plaintiff and the local State Attorney's Office were filed in the court docket by the Clerk of the Court as this Plaintiff's attempt to get these crimes investigated. Case 2011-cv-4389 docket #311, 312 ans 321. These letters are dated June and July of 2021, prior to Judge Susan Stacy granting BOA permission to reopen this case on February 2, 2022, for the sole purpose of setting a sale date.

12. Upon Mr. Annette's filing of a report with the Seminole County Sheriff's Department in 2019, the 2005, Forged Deed was removed from the Chain of Title and Mr. Annette was again recognized by the Seminole County Land Records Office and Tax Department as a lawful owner. In 2022, the Seminole County Tax Department determined that although this Plaintiff still qualified for homesteading she was no longer entitled to the tax benefits provided under the State's homesteading act, and her annual taxes due were doubled for that year. On May 8, 2023, the Clerk of Courts filed the Certificate of Title reporting FNMA as the new owner of record, the county land records reinstated the 2005 deed Forged, removing Mr. Annette from the title, and FNMA was granted a government exemption from paying the annual real estate tax on the subject property.

13. Counsel for FNMA advised at an August 3, 2023 hearing that FNMA was not a government agency but a government sponsored entity with a board of director and shareholders thereby not subject

to the limitations of the Eminent Domain Clause while at the same time entitled to the government exemption from paying tax both the stamp tax fee of $541.00 for the recording of the conveyance of this property and the annual real property tax.

14. Florida Laws regarding proper conveyance of land ownership in the Public Records are, **Fla. SS 689.01- How Real Estate is Conveyed, Fla. SS 692.01 – Conveyance executed by Corporations, and Fla. SS692.02 – Validation of Conveyance**. The following documents have been recorded and filed in the Seminole County land records on this property are inconsistent with these Laws:

A) A 2005 Quitclaim Deed - Reports inaccurate information and lacks the grantor's signature and witnesses.

B) A 2005 Mortgage - Lender is not a legally formed entity, and requires but it lacks both owners' consent and signatures to be enforceable against both parties.

C) An Assignment of Mortgage – MERS in and of itself is not a legal entity. This document was not signed by a Corporate Executive with the authority to convey assets and contains no Corporate Seal.

D) A Certificate of Sale - Contains an unidentified purchaser, reports a purchase for Cash which is an untrue statement, and was not signed by a party with the authority to convey ownership.

E) An Assignment of Bid – Reports to convey nothing of value or property rights, not signed by a Corporate Executive, and contained no corporate seal.

F) A Certificate of Title - Reports falsely that the property was "sold" to FNMA and not signed by a party with the right to convey. (Legal tender is required for all Real Estate Transactions to be legal)

This acceptance and use of non-conforming documents to convey ownership of privately owned real property by the Judiciary were also a First Impressions issue in the State Case that remains unresolved.

15. FNMA's "Servicing Guide" requirement for the use of "MERS" as a nominee on a mortgage contract Must be a named listed member of MERS. The named mortgage lender on the original mortgage contract was America's Wholesale Lender (AWL) who was never a member of MERS". All MERS member servicers work for FNMA. Thereby all mortgage servicers work for the United States' sub-agent FNMA as members of MERS. FNMA instructs servicers regarding certain responsibilities they have to FNMA as to FNMA's ownership interest in the property based on the mortgage contract reporting to have MERS as a nominee. Property ownership interest was not granted to the original alleged lender therefore FNMA has no property ownership interest in any Florida mortgage as the mortgage is a debt/lien-only contract. The Federal Deposit Insurance Corporation and the Federal Housing Finance Agency, MERS an agent for lenders without any reference to MERS as a principal. On October 5, 2018, Intercontinental Exchange (NYSE: ICE) and MERS announced that ICE had acquired all of MERS. This Plaintiff never agreed to relinquish any ownership to FNMA or the allusive MERS.

16. It is unclear, to this Plaintiff, if FNMA actually purchases any mortgages or just assumes control and an ownership interest in all alleged mortgage debts. It would appear from the instruction to servicers in this guide that FNMA considered itself a direct owner in all mortgaged property. If so, this would be in conflict with the 5th Amendment requires of Government to only take a controlling interest under the Eminent Domain Clause. See U.S. Supreme Court ruling in **Stop The Beach Renourishment Inc. v Florida EPA case no. 08-1151 June 17, 2010** where Justice Antonin Scalia wrote the opinion of the High Court and stated:

**"It would be absurd to allow a State to do by judicial decree what the Takings Clause forbids it to do by legislative fiat."28**

Scalia amplified his reasoning:

**"In sum, the Takings Clause bars the State from taking private property without paying for it, no**

**matter which branch is the instrument of the taking. To be sure, the manner of state action may matter: Condemnation by eminent domain, for example, is always a taking, while a legislative, executive, or judicial restriction of property use may or may not be, depending on its nature and extent. But the particular state actor is irrelevant. If a legislature or a court declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation."**

17. Also see this Nation's Landmark ruling of the **U.S. Supreme Court in U.S. v Lee (1882)** where the this Nation's highest court heard an appeal by the United States to a Jury verdict returning the land, known today as Arlington National Cemetery, to the lawful heir of the original owners. The government military had already laid siege to the property before it was auctioned for taxes due. Thereby the government was the only bidder having already claimed possession of the property.. The High Court in this Nation determined that unlike citizens in England who were considered "subjects of the monarchy" American citizens were the sovereigns in this Nation, as it stated:

**"Under our system the people, who are there called subjects, are the sovereign. Their rights, whether collective or individual, are not bound to give way to a sentiment of loyalty to the person of the monarch. The citizen here knows no person, however near to those in power, or however powerful himself, to whom he need yield the rights which the law secures to him when it is well administered. When he, in one of the courts of competent jurisdiction, has established his right to property, [106 U.S. 196, 209] there is no reason why deference to any person, natural or artificial, not even the United States, should prevent him from using the means which the law gives him for the protection and enforcement of that right."**

18. The case before this court is one of the basic rights of two sovereign people in this nation to own privately, jointly, and/or individually and combined **"Without Government Interference"**. Thus as stated in the Bill of Rights.

Issues regarding the superiority on land titles and the right of citizens to own land without interference, along with the requirements of each state to maintain and safeguard the land records within their respective borders are stated in the Northwest Ordinance of 1787 and have been in effect in this Nation for 235 years. This nation's already existing states were required to come into compliance

with this Ordinance. This Ordinance has only had one revision which was the Emancipation Proclamation of 1863. This revision outlawed any entitlement one person had to own another person.

## ROOKER-FELDMAN DOCTRINE

19. The U. S. Supreme Court stated in its ruling in **Exxon Mobil Corp et. al. v Saudi Basic Industries Corp. Case No. 03-1696 March 30, 2005**, that it has only acknowledged the Rooker-Feldman Doctrine in the two cases it was applied. It also advised that this doctrine has been used by Federal District Courts to dismiss cases they simply did not wish to hear.

20. In 2018 The Federal District for the Middle District of Florida dismissed this Plaintiff case against BOA for violation of the Fair Debt Collection Act of the United States Congress (FDCA) Federal Statute **15 USC 1692g** as being the same case as the state foreclosure case, which it was not. The original state Trial Court Judge had dismissed BOA's foreclosure action partly based on their failure to comply with this mandated Federal Law and failure to provide the borrower with a Default/Acceleration letter 30 days before filing a foreclosure action. This requirement is stated in paragraph 22 of the mortgage and was part of the requirement for validation of debt. The Borrower was entitled to the right to dispute or object to the claim of Default before BOA filed its foreclosure. This was a violation of Judge Collyer's National Consent Judgment Court Order as well. The State Appellate Court has no jurisdiction to grant an exception to this Federal Law and court order in favor of BOA. Further, the State Appellate Court used this issue when it reasoned it had the right to waive any right this Plaintiff had to defend her property before mandating a foreclosure in favor of the Bank. See **Clearfield Trust Co. v United States 318 U.S. 363 (1943)** also known as the **Clearfield Doctrine of Law.**

21. On May 5, 2019, this Plaintiff brought an action against five Florida Judicial Officers for an Injunction to stop the Deprivation of Human Civil Rights (6:19-cv-885). The Federal District Court in

Orlando misapprehended, misinterpreted, and misused the Rooker-Feldman Doctrine to dismiss this case. This case brought before the Orlando District Court did not involve the same litigants and the issues were deprivation of rights, not foreclosure. Clearly, this was a miscarriage of justice and is now being misused by the State to motion this Article III court to dismiss this case based on the above doctrine.

**MAY 6, 2016. Florida Fifth District Court of Appeals Ruling**
**in and for the State of Florida Case No, 5D14-4511**
**Bank of America et al. v Linda Nash and Richard Annette**

22. Both BOA and the State of Florida Corporation wish this court to rely on the State Corporate Judicial Officers' opinion handed down after this Plaintiff won at trial and BOA appealed the finding of the Trial Court Judge. However, it is a maxim of law that no court should follow a court-ordered Judgment to stand when it is void of all law.

23. Whereas the above State Appellate Court's decision to overturn the Trial court finding, waive all rights of this Plaintiff to present a Defense, and mandate a foreclosure on behalf of BOA was based on the appellate court's determination to allow BOA to circumvent and violate, State and Federal Laws as well as this court's National Consent Judgment order. This would also be inconsistent with the state's reported goals to protect homeowners from harm when the Florida Attorney General entered into the National Consent Judgment and accepted Florida's portion of the $12.6 Billion BOA was ordered to pay.

Listed below are the Florida Statutes the State Appellate Court determined BOA didn't need to follow or obey as cited directly from that ruling, which was submitted with the original Complaint in the case:

**Fla SS 494.0025** – Prohibited Practices

**Fla SS 494.0072** – Administrative penalties and Fines

**Fla SS 494.006(3)** – Exemption to Licensing laws (omitted from the ruling was which requires anyone claiming an exemption must already have an exemption

**Fla SS 607.1501(1)** – Authority of Foreign Corporation to transact business

**Fla SS 865.09 (1)(a), (3) & (9)(b)** – Fictitious Name Registration requirements filings

24. The opinion of the State Appellate Court did not take into consideration the Rule of Law, the Clean Hands Doctrine, or any Law of Voids. In the National Consent Judgment BOA voluntarily waived their right to a defense in writing. The State Appellate Court Judicial Officers took it upon themselves to waive the rights of the homeowners to present a defense and administratively mandate that a foreclosure be entered in favor of BOA without the benefit of a Trial Court findings consistent with the State Corporate Judicial Officers Administrative Court opinion. See above referenced **Clearfield Doctrine**

25. On page five of the State Appellate Court's May 6, 2016 ruling. The Court specifically mandated a foreclosure after the court itself violated this Plaintiff's right to present a Defense before her home and land could be taken from her and her co-owner. This was a clear violation of both homeowners' right to a defense and due process which is a clear violation of her Constitutionally protected Human Civil Rights. On this basis, the Plaintiff has not only the right to bring this case to THIS Federal District Court but to appeal any decision that would reflect this court's granting or sanctioning this deprivation of rights to the United States Supreme Court. See **E-4 Rodney Class v United States of America Case No. 16-424, February 21, 2018.**

## SEMINOLE COUNTY COURT LACK OF JURISDICTION AND ALLEGED SALE OF PROPERTY

26. On December 17, 2020, the Seminole County Corporation Court held a hearing to determine if this Plaintiff had enough evidence for the court to move forward on her Motion for an Evidentiary Hearing. Substantial evidence was submitted to the lower court related only to issues not addressed in the original May 6, 2016, ruling by the state appellate court. The three most important issues were: 1) evidence that documents filed in the land records and with the court had been altered after the homeowner had signed them; 2) The mortgage was attached to a fraudulent deed reporting to remove Mr. Annette from title: 3) that $17,600 that had been paid to and received by BOA then reversed out of the account. These charges went undenied and undisputed by BOA's counsel. The Seminole County Court did not rule on the evidence or the issues. The court simply denied the Motion for an Evidence Hearing, and then reported the court lost jurisdiction to rule in favor of the homeowners.

27. On May 11, 2021, Judge Stacy closed the foreclosure case, due to lack of jurisdiction, denied all open motions, canceled any scheduled hearings, and advised any outstanding prayers for relief must be filed under a separate petition. The Bank's motion to set a sale date was among those open motions that were denied and BOA chose not to appeal this ruling of the lower court.

28. On February 9, 2022, BOA Motioned the Seminole Count Court to Reopen the foreclosure case to set a Sale date based upon the mandate of foreclosure granted them by the Appellate Court on May 6, 2016. An alleged sale date was scheduled for July 28, 2022, over this Plaintiff objection. The Court advised this setting of a sale date was an "Administrative" duty of the court.

29. The Seminole County Corporation Clerk's Officer reported that an alleged "CASH" sale took place as ordered, however, this alleged Public Auction Sale was not compliant with the required Florida

Statutes for a Foreclosure Sale **Fla. SS 45.031** – Judicial Sales Procedures and **Fla. SS 468.388** – Conduct of a Public Auction.

30. On March 30, 2023, a scheduled hearing was held on this Plaintiff's Objection to Sale. Evidence obtained from the Seminole County General Counsel, by this Plaintiff through an Open Records Request under the Freedom of Information Act of the United States Congress, that proved no sale occurred, and no money changed hand in this alleged "Cash-Only" sale and the requirement stated in the above Florida Laws were not followed. This was confirmed by General Counsel for the Seminole County Clerk of the Court and was consistent with documents filed in the court docket as the court having received no funds that could be disbursed.

31. On August 3, 2023, a hearing was held on FNMA's Motion to the Court for a Writ of Possession and this Plaintiff's Motion for a Stay from that Writ. This Plaintiff advised the court that FNMA was a government agency, and as such could only acquire private property through the Eminent Domain clause of the US Constitution. Counsel for FNMA stated he never admitted his client was a government agency. He further states that FNMA was a Government-Sponsored Agency (GSA). See above above-referenced US Supreme Court ruling **Stop The Beach Renourishment Inc. v Florida EPA.**

In addition See U.S. Supreme Court ruling in **West Virginia Et. Al. v. The EPA case no. 20-1530 June 30, 2022**. Where Chief Justice John Roberts stated:

**"Nonetheless, our precedent teaches that there are "extraordinary cases" that call for a different approach—cases in which the "history and the breadth of the authority that [the agency] has asserted," and the "economic and political significance" of that assertion, provide a "reason to hesitate before concluding that Congress" meant to confer such authority. *Id.*, at 159–160."**

Justice Robert also stated:

**We rejected that "expansive construction of the statute," concluding that "Congress could not have intended to delegate" such a sweeping and consequential authority "in so cryptic a fashion." *Id.*, at 160. In *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 594 U. S. ___,**

**___ (2021) (*per curiam*) (slip op., at 3), we concluded that the Centers for Disease Control and Prevention could not, under its authority to adopt measures "necessary to prevent the . . . spread of " disease, institute a nationwide eviction moratorium in response to the COVID–19 pandemic. We found the statute's language a "wafer-thin reed" on which to rest such a measure, given "the sheer scope of the CDC's claimed authority," its "unprecedented" nature, and the fact that Congress had failed to extend the moratorium after previously having done so.**

Justice Roberts went on to cite both the CDC and OSHA as having exceeded the regulatory authority granted to them by congress

**All of these regulatory assertions had a colorable textual basis. And yet, in each case, given the various circumstances, "common sense as to the manner in which Congress [would have been] likely to delegate" such power to the agency at issue, *Brown & Williamson*, 529 U. S., at 133, made it very unlikely that Congress had actually done so. Extraordinary grants of regulatory authority are rarely accomplished through "modest words," "vague terms," or "subtle device[s]." *Whitman*, 531 U. S., at 468. Nor does Congress typically use oblique or elliptical language to empower an agency to make a "radical or fundamental change" to a statutory scheme.**

32. FNMA was created in 1938 through an amendment to the National Housing Act of Congress. Congress did not grant to this entity a power Congress itself never had Therefore Congress itself published a report with grave warning for concerns The Congressional Oversight Panel Report of November 16, 2010, Titled **"Examining The Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation"**. At no time did Congress relate to or imply that FNMA had been granted congressional authority to place itself on the title to all Mortgages and Deeds of Trust under its ownership and alias "MERS", falsely reporting to have an ownership interest in the real property collateral. Their concern was for the Banks, as they understood that individual property owners had remedies to these banks' violation of existing mortgage lending laws and filing improper invalid documents in land records if those accusations were correct.

33. Congress also appeared unaware of the FNMA Servicing Guide that reports that in all Mortgages/Deeds of Trust where MERS was declared as nominee for the lender all servicers then worked directly for FNMA. This would also appear to be inconsistent with the Real Estate Settlement

Act of the United States Congress (known as RESPA) another indication that Congress had never granted FNMA such overreaching authority.

34. On September 5, 2018, CNBC published an article reporting FANNIE MAE and FREDDIE to be Uncle Sam's Cash Cows, Quoting from that article:

**"Eventually the handout turned into a handsome profit for the U.S. government. So far, Fannie Mae has paid $167.3 billion and Freddie Mac has paid $112.4 billion. Add it up, and the two drew $191.4 billion but paid $279.7 billion, a net profit of $88.3 billion — and they continue to pay."**

This is a very far cry from what Congress had intended or granted these GSAs the authority to do. See **E-4 CNBC Article.**

**SUMMATION**

35. The Safeguarding and Maintaining of all land records within the borders of the State of Florida has been designated as a responsibility of the Florida State Bureau of Surveying and Mapping, which is directly answerable to the Governor and his/her cabinet as a Requirement of Statehood. See **E-5 Fla. Bureau of Surveying and Mapping**

36. The Framers of the Constitution created the Northwest Ordinance of 1787, 235 years ago. This ordinance established the basic requirement for the forming of new states and territories government. The U.S. Constitution attributes much of the Bill of Rights to these Ordinances and specifically grants the Governor and a commission to safeguard and maintain the land records. See **E-6 Northwest Ordinance of 1787**

37. The framers of the Constitution, when setting up this great Republic form of government, understood throughout world history whoever "Owns" the Land rules over the Land. Thereby the framers severely restrict and limit the government' ownership and control to small slivers of land. In addition, the only access the government has to acquire land is through the Eminent Domain clause,

which requires a real public need for the acquisition of the property, the lawful owners of record are to be paid a fair market value for the taking, and that after conversion to the public need, the property is returned to the "Domain" of the people. Thus this government, federal, state, and local is mandated to do the peoples' business anything less or out of loyalty to any other entity is both a Breach of their oath of office and the Public Trust granted to the government by the people.

38. BOA was ordered to pay more than $12.6 Billion as its share of the $25 Billion awarded to the states in Nation Consent Judgment for the damage and injury BOA had caused to the Homeowner victims in these states. Undeniable proof that the State of Florida did not use any of those funds to protect the good citizens in that state from ongoing criminal activity in the land records, unlawful foreclosures committed by BOA and its predecessors and successors is the fact that most of the counties across the State of Florida, like Seminole County, dedicate a page of their website to their free "Fraud Alert" program. This program falls willfully short of the State and the County's responsibility to the Citizens to maintain a "PERFECT CHAIN OF TITLE" as required by law, as well as the commitment required by this court to prevent further harm to homeowners. The non-removal of fake, forged, fraudulent conveying documents filed in the local land records along with the court and court clerks filing additional improper and invalid documents increases the harm and allows it to pass to more unsuspecting victims. See **Fla. Supreme Court Ruling Wright v Blocker 144, Fla. 428 (1940):**

**"726. FORGED DEEDS. — As forged deeds cannot affect the title to land, and, therefore, are not entitled to record, the provision of the statute that deeds affecting the title, to land shall be void as against subsequent purchasers and creditors without notice, if not recorded has no application to deeds which are forged. Where a person signs a deed under the belief that he is signing a duplicate copy of a lease, never intending to sign a deed, the deed is a forgery, and no title passes thereby. The fact that a deed has been placed on record does not afford notice of any fraud that may have occurred in its execution. It is immaterial what the good faith of the party claiming under a forged deed may be, as no person can be deprived of his property by a forged deed. There can be no rights of a *bona fide* purchaser when the real owner of property stolen, or attempted to be stolen, from him has done nothing to lead the purchaser of it to buy it under the belief that it was *434 not stolen. Reliance on a forged deed, recorded on an absolutely false certificate of acknowledgment, may bring loss upon him who so relies, but neither such deed nor such certificate appended to it can ever affect the owner of the property.' As succinctly said: 'No man can be deprived of his property by a forged deed or mortgage, no matter what may be the**

***bona fifes* of the party who claims under it.' Circumstantial evidence may be sufficient to prove the forgery of a deed."**

While Wright v Blocker addresses "Deeds" it also advises that forged "Mortgages" are included in its ruling which is consistent with 25 rulings from 11 different states. See **E– 5 25 Precedent rulings on Forged Deed from 11 States**

39. This creating new generations of victims who are being deceived into believing that they are purchasing real property when they are being sold nothing of value and no genuine rights to ownership of the home or the land.

40. The original foreclosure case reached national interest in October of 2014 when the Plaintiff and her co-owner won this case at Trial based on the issues addressed by that court in its ruling. It rose to importance against with the May 6 2016 ruling from a court that sets precedence for other Trial Courts to follow. It also is one of several cases listed in the First Amendment right of the people to file a grievance with the government and did so in the National Grievance filed in the United States Congress and 29 States across this nation for Financial Crimes Against Humanity. It was this Plaintiff/homeowners that filed this National Grievance, also known as the National Remonstrance, with the Governor of Florida, the Florida Attorney General, Representative Vern Buchanan, Senator Joe Gruters, and the Secret Service, in February 2020. It should be noted that the Judiciary was Not a branch of government that was served with this Grievance as they are not the lawmakers, law enforcement or have any jurisdictional control to make or change the law. See above stated case **US v Lee** where the highest court in this nation observed:

**"While by the constitution the judicial department is recognized as one of the three great branches among which all the powers and functions of the government are distributed, it is inherently the weakest of them all. Dependent as its courts are for the enforcement of their judgments upon officers appointed by the executive, and removable at his pleasure, with no patronage and no control of purse or sword, their power and influence rests solely upon the**

**public sense of the necessity for the existence of a tribunal to which all may appeal for the assertion and protection of rights guarantied by the constitution and by the laws of the land, and on the confidence reposed in the soundness of their decisions and the purity of their motives."**

41. This very court and Judge Rosemary M. Collyer who adjudicated the National Consent Judgment did so based on her jurisdiction under **28 USC 1331 and 28 USC 13554(a).** Further, this court should and all Defendants should take into consideration two final points. First, this Plaintiff and her property co-owner made several attempts to report the crimes committed in this case to local law enforcement and the local State Attorney's Office; Second: This court and all courts should be mindfully aware that there is_no statute of limitations on Real Property Deed Fraud or Forgery in the land records; Third, no matter how long it takes, or how many time the land records reports the property was sold and purchased it MUST be returned to the original lawful owner/s/ it was stolen from to in order to maintain a perfected Chain of Title as reported in the United States Oversight Panel Report of November 16, 010.

42. On June 20, 2023, this Plaintiff filed a Motion to reopen her original Civil Rights case in the Federal District Court for the Middle District of Florida Orlando Division. When I went to the court to file this motion I requested a court-stamped copy of the first page as a receipt. The courts normally charge $0.50 for that service. However, I was advised that the court no longer accepts CASH as a valid form of payment. This Plaintiff was informed that the only acceptable form of payment in that clerk's office was a bank plastic card. I concluded that I was not dealing with the United States Government and that I must be in a foreign establishment when a reported government employee would not accept this nation's currency as legal tender payment for service rendered.

43. On April 27, 2023, this Plaintiff wrote a letter to the Seminole County Sheriff reporting what she believed to be treason as is required by Federal Statutes **18 USC 4 – Misprision of a**

**felony** and **18 USC 2382 - Misprision of treason.** The Sheriff is the only constitutional officer with knowledge and evidence of events in the State Foreclosure Action and aware of the numerous violations of the laws involved in this case that had not previously sworn a loyalty to the for-profit privately owned corporation Bar Association. The unlawful invasion, capture, and seizure of American Soil by a foreign entity is Warring on the Republic of the United States of America, its Constitution, and its people. Therefore an obligation of every American to report this criminal activity to a constitutional office See **E- 8 – Letter to Seminole County Sheriff**

44. This court has already determined that it has the Jurisdiction to hear the claims in this case, as took original jurisdiction regarding the same claims filed with this court on April 4, 2012, involving 3 out of 4 of the above-listed Defendants. As a result of those Litigants' failure to comply with this court's order, we now face a record number of homeless people across the state of Florida and this nation. The Consent Judgment states: **"Whereas, the intention of the United States and the States in effecting this settlement is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant"** The United States Judicial Officers as well as the State of Florida law enforcement and Judicial Officers did not comply with numbers 3, 4, 9, 10, 17 and 19 of the Consent Judgment. As a result between 2012 and 2023 millions of Floridians lost their homes to the same ongoing acceptance of fraudulent forged, manufactured documents to be used to convey property and ownership rights of private citizens to BOA and its successors. The State Courts themselves have been a direct contributor to more improper and invalid conveying documents filed in land records. This is based on the continuation of this foreclosure by BAR card carriers representing BOA and/or its many successors without interference or even the threat of interference by the State Judiciary, Law Enforcement Agents, or the Bar. While the State of Florida had shut down large law firms representing BOA and it's successors, such as the original law firm that filed BOA's original suit against this

Plaintiff and her co-owner. Sadly the only Bar Card Carrier that was ever disbarred was one of this Plaintiff's former counsel.

45. There is a case before the United States Supreme Court, **SEC v Jarkesy** docket number 22-859, that has raised the issue of governmental agencies being able to use administrative power and administrative courts to resolve issues while ignoring citizens' constitutionally protected right to Trial by Jury when it involved life, liberty or property. This Plaintiff reserves her right to appeal a dismissal of this complaint for Deprivation of Civil Rights before a Jury has had an opportunity to rule on the issues involved. See **E-9 – Rodney Class v United States 583 U.S. 2018.**

The plaintiff stands on her pleadings and evidence, and reserves her right to supplement or amend her complaint and this response to any Motions for dismissal. The plaintiff also reserves her right to a jury trial and her right to appeal to the United States Supreme Court for deprivation of her Human Civil Rights should this court decide to dismiss this case based the Motions to do so from these corporate defendants.

Respectfully submitted

Linda A. Nash

Linda A. Nash, Plaintiff's
2136 Linden Rd.
Winter Park, Fl. 32792
(lindanash157@gmail.com)

# LIST OF EXHIBITS


| Exhibit No. | Page No. |
|---|---|
| E-1 National Consent Judgment | 26 |
| E -2 Northwest Ordinance of 1787 | 336 |
| E-3 Trial Court Ruling | 342 |
| E-4 Rodney Class v United States | 347 |
| E-5 CNBC Article | 354 |
| E-6 Fla. Bureau of Surveying and Mapping | 357 |
| E-7 Multiple State Ruling on Forged Deeds | 360 |
| E-8 Letter To Sheriff | 372 |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I emailed all Defendants a true and correct copy of the foregoing along with the exhibits to their appoint counsel of record listed below on December 22, 2023, with the exception of US Attorney Roger Handberg which was sent via US Postal Service as upon request no email address was provided in violation of Fed, R. Civ. P. 7001 et seq.

Linda A. Nash Plaintiff

SERVICE LIST:

United States Department of Justice
Roger Handberg US Attorney
400 W. Washington Street Suit #3100
Orlando, Fl. 32801

State of Florida
Florida State Attorney Blain Goff
Blain.Goff@myfloridalegal.com

Seminole County Florida
Commissioner Amy Lockhart
CAOAdmin@seminolecountyfl.com

Bank of America Inc.
Andrew Kemp-Gerstel
akg@lgplaw.com